(Nos. 54395, 54396 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. LAWRENCE LEE EVANS et al., Appellees.

Opinion filed November 20, 1981.

Tyrone C. Fahner, Attorney General, of Springfield, and Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and Debra A. Buchman, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.

Burger, Fombelle, Wheeler & Dvorak, P.C., of Decatur, for appellee Larry Evans.

Daniel D. Yuhas and Lawrence Bapst, of the Office of the State Appellate Defender, of Springfield, for appellee John Dorris.

MR. JUSTICE MORAN delivered the opinion of the court:

Defendants, John Dorris and Larry Evans, were jointly tried before a jury in the circuit court of Champaign County

for the murder of Charles Wilson and the attempted murder of Willie Davenport. Following instructions on lesser included offenses, the jury returned verdicts of guilty of involuntary manslaughter and aggravated battery against Dorris and guilty of voluntary manslaughter and aggravated battery against Evans. The trial court sentenced Dorris to five years for involuntary manslaughter, to be served concurrently with three years for aggravated battery. Evans was sentenced to an extended term of 10 years' imprisonment for voluntary manslaughter and the maximum term of five years for aggravated battery, to be served concurrently. The appellate court reversed the judgments of conviction against Dorris. It affirmed the judgments of conviction against Evans, but vacated the extended sentence and remanded for resentencing. 90 Ill. App. 3d 707.

The issues before us are (1) whether the circumstantial evidence against Dorris, on an accountability theory, excluded every reasonable hypothesis of innocence so as to establish his guilt beyond a reasonable doubt, (2) whether Evans was proved guilty beyond a reasonable doubt of voluntary manslaughter, (3) whether the trial court erred in imposing an extended sentence for Evans' voluntary manslaughter conviction, and (4) whether the convictions of Evans and Dorris should be reversed because of inconsistent verdicts reached by the jury. In view of the results reached, this last issue need not be addressed.

A summary of the facts reveals that during the day of September 12, 1979, Dorris went to the home of Evans to have Evans work on the transmission of his car. At this time, Evans stated that he did not have any bullets for his gun, whereupon Dorris informed him that his cousin had left some in Dorris' car. Evans obtained sufficient bullets to load his pistol. Later that evening, at approximately 7:30 p.m., Dorris stopped by a car wash where he met Davenport. At this meeting, Davenport made some insulting remarks about Dorris' dog, after which Dorris left and

chanced to meet Evans, who was driving about Champaign. According to Evans, Dorris invited Evans to accompany him to the car wash to celebrate Wilson's birthday. This occurred at about 8:30 or 9 p.m. Evans then drove home, where Dorris picked him up. Evans took his gun from his car, but testified that he did not inform Dorris of that fact.

Evans and Dorris arrived at the car wash, where approximately 25 to 30 people had gathered. Dorris got out of the car and, according to Evans, was speaking to Wilson when Davenport approached Wilson and Dorris. At some point, Davenport and Dorris exchanged angry words and gestures. It appears that Dorris then walked away and Evans and Davenport exchanged words. Evans testified that Davenport said, "I'll do to you the same thing I will do to John" and then turned toward his car. At this point, the record indicates that Evans, who was still seated in Dorris' car, jumped out of the car and fired two shots, one hitting Davenport in the leg, the other striking the windshield of Davenport's car. Evans then chased Davenport around his car, firing several shots. Evans finally caught Davenport and struck him on the head with his gun. At this point, Dorris searched Davenport's car and remarked that he couldn't find a gun. At the conclusion of these events, Charles Wilson was discovered lying nearby with a chest wound from which he died. The bullet that caused the wound was not of the same type as those that were subsequently found in the glove compartment of Dorris' car.

The State proceeded against defendant Dorris on the theory that he was accountable for the acts committed by Evans. Section 5—2 of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1979, ch. 38, par. 5—2) provides:

"A person is legally accountable for the conduct of another when:

* * *

(c) Either before or during the commission of an

> offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. ***"

Mere presence does not render one accountable under the statute; there must be proof of the required intent and that defendant aided, abetted or attempted to aid another in the perpetration of the crime. *People v. Tyler* (1979), 78 Ill. 2d 193, 196-97.

As the State concedes, proof of Dorris' role in the crime rests on circumstantial evidence. Circumstantial evidence is the proof of facts or circumstances which gives rise to a reasonable inference of other facts which tend to establish the guilt or innocence of a defendant. When the evidence finding defendant guilty is entirely circumstantial, the facts proved must be consistent with defendant's guilt and inconsistent with any reasonable hypothesis of innocence. (*People v. Rhodes* (1981), 85 Ill. 2d 241, 249; *People v. Garrett* (1975), 62 Ill. 2d 151, 163; *People v. Branion* (1970), 47 Ill. 2d 70, 77; *People v. Lewellen* (1969), 43 Ill. 2d 74, 78; *People v. Benson* (1960), 19 Ill. 2d 50, 61.) In this case the trial court, over objection of Dorris, failed to include the second paragraph of Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.02 (1968), which states:

> "You should not find the defendant guilty unless the facts and circumstances proved *exclude* every reasonable theory of innocence." (Emphasis added.)

This paragraph should be given when the proof of guilt, as to each element of the offense, is circumstantial. Here the State concedes that conviction of Dorris was founded on circumstantial evidence; therefore, this portion of the instruction should have been given to the jury. The State asserts that the jury was aware of the law on this point. We find no substantiation for such assertion because it is the court that instructs the jury on the law to be applied to the facts presented.

Nevertheless, the State posits that the circumstantial evidence against Dorris excluded every reasonable hypothesis of innocence, thereby establishing his guilt beyond a reasonable doubt. The State concludes that "it is evident Dorris picked up Evans for support in his argument with Davenport and had returned to the car wash with the intention of doing physical harm to Davenport." The State contends it is "apparent that Evans and Dorris had previously discussed this course of action because Dorris moved away from the path of the bullets of Evans as if he was moving in response to a signal from Evans." The State also asserts that Dorris' failure to attempt to stop Evans during the incident "is consistent with the view that Dorris and Evans had gone to the car wash looking to get Davenport."

We recognize that proof of a common purpose can be drawn from the circumstances surrounding the commission of an act. (*People v. Holmes* (1977), 67 Ill. 2d 236, 240; *People v. Tate* (1976), 63 Ill. 2d 105, 109; *People v. Richardson* (1965), 32 Ill. 2d 472, 476.) However, the facts in this case are clearly distinguishable from cases where, in addition to a defendant's mere presence, the evidence demonstrated that the defendant possessed the necessary intent and that he solicited, aided, abetted, or attempted to aid in the planning or commission of the offense, thereby leading to a conviction under an accountability theory. (*People v. Tyler* (1979), 78 Ill. 2d 193; *People v. Holmes* (1977), 67 Ill. 2d 236; *People v. Morgan* (1977), 67 Ill. 2d 1; *People v. Tate* (1976), 63 Ill. 2d 105; *People v. Richardson* (1965), 32 Ill. 2d 472.) In those cases, the facts did not support any reasonable hypothesis of innocence. *Cf. People v. Shields* (1955), 6 Ill. 2d 200 (defendant's mere presence at the commission of an alleged offense, without any affirmative act of assisting, abetting or encouraging the commission of the act was not sufficient to make him a principal in the commission of the offense).

The State's conclusions in this case are based upon speculation and conjecture. Our review of the record reveals no direct evidence of fact upon which the jury could arrive at the conclusions advanced by the State to establish accountability on the part of Dorris. Evans testified that he and Dorris returned to the car wash to meet Wilson to celebrate his birthday. Evans also testified that Dorris did not know he was taking his gun along. There is no evidence that Dorris did know of that fact. Further, there is no evidence in the record that Dorris signaled Evans to shoot. None of the State's witnesses testified to that effect. In addition, two of the State's witnesses testified that the argument appeared to be over between Davenport and Dorris when Evans and Davenport began arguing. As to the bullets obtained by Evans in his earlier visit with Dorris, this occurred prior to both of Dorris' encounters with Davenport. Moreover, the record does not reveal that Dorris' first meeting with Davenport involved a serious argument that would form the basis for the inference that Dorris enlisted Evans' aid to shoot Davenport.

The evidence presented leads to the conclusion that the State failed to meet its burden of excluding every reasonable hypothesis of innocence. Consequently, Dorris' convictions of involuntary manslaughter and aggravated battery were correctly reversed by the appellate court.

Defendant Evans argues that he was not proved guilty beyond a reasonable doubt of voluntary manslaughter. Section 9—2(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(b)) provides:

"A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

Evans argues his belief that he was acting in self-

defense was reasonable. To support this argument, he points to the fact that the evidence revealed that Davenport was reputed to carry guns and that Davenport threatened him and then turned to his car, presumably to get his gun. Evans testified that he shot at Davenport and chased him around the car with the intention of keeping Davenport from reaching into his car to get his gun. On the other hand, several witnesses testified that Davenport made no move to reach into his car when the shooting started. No one other than the defendant testified that it appeared as if Davenport attempted to get into his car. Finally, a search of Davenport's car after the shooting did not reveal a gun.

The determination of whether the defendant's subjective belief is reasonable in a manslaughter case is for the jury to make. (*People v. Lockett* (1980), 82 Ill. 2d 546, 552.) This court will not disturb the jury's verdict as to whether a killing is justified under self-defense "unless the evidence is palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory that it justifies entertaining a reasonable doubt of the defendant's guilt." (*People v. Jordan* (1960), 18 Ill. 2d 489, 492-93.) The standard set by the rule was not met in this case. We believe, from the evidence presented, the jury could have properly concluded that Evans' belief that the shooting was necessary to prevent his own death or bodily harm was unreasonable. Consequently, the evidence proved Evans guilty of voluntary manslaughter beyond a reasonable doubt and his conviction of that offense is affirmed.

Evans also argues that the extended-term sentence he received was improper. Section 5—5—3.2(b)(2) of the Unified Code of Corrections provides that an extended sentence may be imposed "[w]hen a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2).) The trial judge found that Evans'

acts constituted wanton cruelty and imposed an extended sentence for voluntary manslaughter. The appellate court reversed the extended sentence because Wilson was an unintended target and killed as a result of unintended action and there was some evidence that Evans believed he was acting in self-defense. The State argues that (1) the extended-term provision is applicable to crimes that result in injury to an unintended victim and (2) the actions directed at Davenport constituted wanton cruelty.

Section 5—8—2(a) of the Unified Code of Corrections provides:

"A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 *for the class of the most serious offense of which the offender was convicted* unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2(a).) (Emphasis added.)

When section 5—8—2(a) is read in conjunction with section 5—5—3.2, it is clear from the plain language of the statutes that the most serious offense of which the offender is convicted must be accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. In this case, Evans could only receive an extended sentence if the voluntary manslaughter offense (a Class 2 felony (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(c))—as opposed to aggravated battery, a Class 3 felony (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(e)))—were accompanied by wanton cruelty. Evans' voluntary manslaughter conviction arose out of Wilson being killed by an apparently stray bullet. Inasmuch as Wilson was an unintended victim and none of Evans' actions were directed toward Wilson, we concur in the appellate court's determination that the voluntary manslaughter offense was not accompanied by exceptionally brutal or heinous behavior indictive of wanton cruelty.

We recognize that the present legislative scheme could lead to the anomalous result of insulating a defendant from receiving an extended sentence for an offense accompanied by wanton cruelty by virtue of his conviction of a more serious offense. This case, however, does not present a situation in which that problem arises. We do not believe that Evans' actions directed toward Davenport were indicative of wanton cruelty. The fact that the trial court gave a voluntary manslaughter instruction reveals there is at least some evidence that Evans' actions toward Davenport were made under the subjective belief he was acting in self-defense. Further, the jury's verdict of voluntary manslaughter, rather than murder, necessarily reveals its conclusion that a subjective belief was present. See *People v. Lockett* (1980), 82 Ill. 2d 546, 551-53.

Our review of the record supports that determination. Although no gun was found in Davenport's car, several witnesses testified that Davenport had the reputation of being a violent person and of carrying a gun. Evans testified that Dorris told him earlier in the evening that Davenport had pulled a pistol on him two or three times. Evans also stated that Davenport turned toward his car. Two witnesses testified that Evans might have been pointing the gun in the air when he shot and that it appeared as if he might have been attempting to scare Davenport to prevent him from getting to his gun. Also, several witnesses testified that the gun discharged when Evans hit Davenport, demonstrating the possibility that the continued shooting was only to prevent Davenport from getting to his car until Evans could catch him. Compare *People v. Jones* (1979), 73 Ill. App. 3d 99.

In our opinion, actions committed under a subjective belief, albeit unreasonable, that the actions were in self-defense do not constitute wanton cruelty. As the appellate court noted, section 5—8—2 of the Unified Code of Corrections was not intended to convert every offense into an

extraordinary offense subject to an extended-term sentence. (See *People v. Schlemm* (1980), 82 Ill. App. 3d 639, 651.) Because the evidence indicated that *all* Evans' actions toward Davenport were committed under the belief, although unreasonable, that he was acting in self-defense, we cannot say the aggravated battery offense was accompanied by wanton cruelty.

We conclude that the trial court erred by imposing an extended sentence for Evans' voluntary manslaughter conviction. See *People v. Cox* (1980), 82 Ill. 2d 268; *People v. Perruquet* (1977), 68 Ill. 2d 149.

For the above reasons, the judgments of the appellate court are affirmed.

*Judgments affirmed.*