THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM R. STOUT, Defendant-Appellant.

Fourth District No. 4—83—0445

Opinion filed February 21, 1984.—Rehearing denied April 6, 1984.

Daniel D. Yuhas and James G. Woodward, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On April 18, 1983, following a jury trial in the circuit court of Mc-Lean County, defendant, William R. Stout, was convicted of felony murder resulting from a robbery, involuntary manslaughter, robbery, aggravated battery, and battery. He was subsequently sentenced to concurrent terms of 30 years' imprisonment for murder, 10 years for robbery, and 10 years for aggravated battery. The court did not im-

pose sentences for involuntary manslaughter and battery, because they were included offenses.

On appeal, defendant first contends that the evidence was insufficient to prove his guilt of robbery, involuntary manslaughter or felony murder beyond a reasonable doubt because: (1) No showing was made of the element of robbery which requires that the victim be deprived of property; (2) even if the robbery were proved, defendant was not proved guilty of felony murder by robbery, because no showing was made that the killing of the victim took place in the course of the robbery; and (3) even if the foregoing were shown, the murder and involuntary manslaughter convictions must be set aside, because no showing was made that any acts attributable to defendant were a contributing cause of the death of the decedent. Defendant also maintains that the convictions for battery, robbery, and involuntary manslaughter should be vacated, because they were included offenses of the felony murder or arose from the same act. Finally, he argues that the court abused its discretion in imposing extended-term sentences for the robbery and aggravated battery convictions.

The evidence at trial indicated that the body of the victim, William Spates, was found at approximately 2 p.m. on November 21, 1982, lying face down and fully clothed in his apartment in Bloomington. A pathologist, who performed an autopsy the next day, testified that the body was then in an advanced stage of decomposition which prevented him from obtaining blood or urine samples for toxicological examination and prevented him from determining whether any evidence of exterior trauma had existed. The pathologist testified that X rays taken indicated the victim had suffered no bone fractures or gunshot wounds. He gave an opinion that the victim suffered from coronary arteriosclerosis and pleuralfibrosis. He estimated that the death occurred between five and ten days prior to the autopsy.

Much of the State's case came from evidence of admissions made by defendant to Detective Charles Crowe of the Bloomington Police Department. Crowe testified that on December 21, 1982, defendant admitted to him that he and Emil Wieland were in the victim Spates' apartment on the evening of November 15, 1982. Crowe testified that defendant then related the following occurrence. Wieland hit Spates in the area of the head four or five times with a closed fist with such force that Wieland "could have broken his arm." Defendant was crouched over Spates' legs while Wieland was striking the blows. Defendant also hit Spates a few times around the mouth. A fracas had started earlier in the kitchen when defendant wanted a drink of

liquor from a bottle in Spates' possession, and Spates would not give defendant a drink. While Spates was on the floor, defendant took off Spates' watch. Defendant did not know why, because he did not want the watch. When defendant and Wieland left, Spates was partially lying and partially sitting with his head against the wall, but he was alive.

Crowe testified that defendant had previously given him a statement in which defendant said that before he left, three black males had come into the victim's apartment, and that defendant and Wieland left before the other three. At trial, defendant admitted that statement was false but said he made up the statement (1) to negate implication that he and Wieland were the last persons to be with Spates while Spates was alive, and (2) in order to get Crowe to leave him alone. At trial defendant also denied taking Spates' watch off Spates' wrist but said that he had his hand on the watch which was on Spates' arm when Spates jerked his arm causing the watch to break in defendant's hand.

■ We consider first the question of the sufficiency of the evidence to prove beyond a reasonable doubt that a robbery occurred. That offense takes place whenever one "takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1981, ch. 38, par. 18—1(a).) Defendant maintains there was no evidence that property was taken from Spates.

Evidence was presented that defendant had several hundred dollars in his possession just prior to the occurrence. The officer viewing the body testified that, at the time he viewed the body, one of Spates' pants' pockets was turned inside out and Spates' wallet was next to the body connected by a chain to the belt. The wallet contained $84. In one of the statements defendant gave to Detective Crowe, he admitted that he and Wieland questioned Spates at the time of the beating about the proceeds of a check belonging to Spates. According to this statement, he asked Spates about the proceeds, because Spates usually gave away some money when, as then, he was intoxicated. The State maintains that this evidence would, of itself, be sufficient for the jury to have inferred that Spates was robbed. We need not decide whether this evidence was sufficient, because we agree with the State's alternate contention that evidence that defendant removed Spates' watch was sufficient to support a determination that robbery occurred.

In *People v. Gaines* (1981), 88 Ill. 2d 342, 430 N.E.2d 1046, the evidence showed that when an accused pointed a pistol at a victim

and announced that a holdup was taking place, the victim removed two $1 bills from his pocket and dropped them to the floor. Proof was not made that the accused or anyone acting in his behalf ever took possession of the bills. The supreme court held that the robbery was complete when the possessor of the bills gave up possession, and another did not have to gain possession of the bills for the offense to have occurred. Under the evidence there, the victim gave up possession because of the threat of force by the accused. Here, according to defendant's statement, possession of the watch was taken from the drunken victim, Spates, by the actual use of force. Defendant had no right to forcefully remove the decedent's watch. The jury could have found beyond a reasonable doubt that defendant did so. Such a determination would have been a sufficient basis for finding that defendant robbed Spates of his watch even though neither defendant nor Wieland ever took possession of the watch after laying it on the floor.

The question of whether the evidence was strong enough to support a determination by the jury that Spates died as a result of a beating administered while defendant and Wieland were in the apartment is involved in both the issue of whether the killing was shown to have taken place in the course of the robbery, and the issue of whether any acts attributable to defendant were a contributing cause to Spates' death. We address the question of the time of Spates' death.

The evidence indicated that Spates' body was found on the floor. By defendant's admission, Spates was lying partly on the floor when he and Wieland left the apartment. Evidence also indicated that the body was clothed in the same apparel he was wearing at that time. The pathologist had estimated the time of death to have been five to ten days prior to the autopsy on November 22, 1982. November 15, 1982, when defendant and Wieland were in Spates' apartment, was seven days prior to the autopsy. Spates' landlord testified that he knocked on Spates' door approximately ten times in the week after November 15 and received no answer. A friend of defendant's who lived in the same building as Spates, testified she saw Spates on November 17, 1983, but the jury could have determined she was mistaken as to the date or making an untrue statement to protect her friend, the defendant. Moreover, she testified that she saw defendant alive at 10:30 p.m. on November 17, a time which was less than five full days before the autopsy and thus not within the five- to ten-day span estimated by the pathologist. The testimony fully supports a determination that Spates died shortly after being beaten by Wieland and defendant.

Because of the lapse of time between Spates' death and the autopsy, the pathologist's testimony as to cause of death was of limited significance. Nothing that he found indicated that death resulted from a beating. However, the doctor did testify that a number of blows to the head could cause death in a person in Spates' physical condition and age. Moreover, any beating Spates received could have been more than defendant admitted. The police officer investigating at the scene where the body was found testified that blood stains appeared on the rug near the body and on the walls of the apartment. Anthony Johnson testified that at the time Wieland and defendant were with Spates, Johnson saw two men through a window, who appeared to be fighting while standing over another person who must have been on the floor. The pathologist testified Spates could have died from causes unrelated to any blows he received. The pathologist admitted that prior to hearing of any scuffle ensuing, he had made out a report indicating that Spates died from natural causes, specifically coronary arteriosclerosis, pleuralfibrosis, and pulmonary congestion. Nevertheless, after hearing the testimony that Spates was struck several times, the jury could have determined that it would have been extremely unlikely for Spates to have died at a time in close proximity to his receiving the blows without the blows having been at least a contributing cause to Spates' death. *People v. Martin* (1983), 112 Ill. App. 3d 486, 445 N.E.2d 795.

Defendant argues that the instant case is similar to *People v. Brown* (1978), 57 Ill. App. 3d 528, 373 N.E.2d 459, and *People v. Kent* (1982), 111 Ill. App. 3d 733, 444 N.E.2d 570. In both cases, the defendant's murder conviction was reversed because the evidence was insufficient to prove beyond a reasonable doubt that defendants' acts were the cause of death.

In *Brown,* defendant was convicted of murder after the person she stabbed with a knife died from a blood clot in her lung eleven days after the stabbing incident. The treating physician concluded that the blood clot originated from the site of the injury, but on cross-examination the doctor conceded that a healthy person with no injuries or history of heart trouble could die of the same blood clotting condition. On appeal, the court concluded that there was a substantial deficiency in the medical evidence to prove that defendant's attack caused or contributed to the ultimate reason for death. The court stated that the issue was whether the State had demonstrated with adequate evidence the existence of an act on the part of the defendant sufficient to cause death. In *Brown,* there was no evidence of an autopsy, and no explanation of decedent's physical condition at death

which would relate it to the defendant's act.

In *Kent,* defendant was convicted of murder based on the evidence that she admitted feeding beer to her baby twice daily from the time the baby was three weeks old until it died at the age of four months. Because the pathologist did not initially consider alcohol poisoning as a possible cause of death, he preserved no blood from the body. The level of alcohol found in the baby's muscle tissue could have been explained by other medical conditions, and thus the appellate court concluded that the evidence was insufficient to show that death was caused by a criminal agency. (*People v. Kent* (1982), 111 Ill. App. 3d 733, 739, 444 N.E.2d 570, 575.) The court determined that since proper medical tests were not performed to exclude the possibility that the alcohol content was from an innocent source, the court concluded that the determination regarding the cause of death was mere conjecture.

■ The instant case differs from *Brown* and *Kent* because of the evidence here of the concurrence in time between the alleged wrongful acts and the death. That evidence permitted the jury here to conclude beyond a reasonable doubt that blows struck at Spates were a causative factor of his death.

Defendant maintains that, even if defendant robbed Spates, and Spates were killed as a result of the beating he underwent, felony murder was not shown to occur because the evidence indicates that any robbery was an afterthought of the beating administered. The jury was not required to conclude that any robbery occurred as an afterthought. Although the evidence may have been insufficient to show that either defendant or Wieland took any money from defendant, defendant's admission that he and Wieland thought Spates might give them some money and the open pocket indicate that defendant or Wieland had an intention to deprive defendant of some property at the time the blows were struck.

■■ ■ In any event, no Illinois case has stated that the fact that robbery is an afterthought of acts of beating prevents the operation of the felony murder rule. The rule is broad in scope. (*People v. Hickman* (1974), 59 Ill. 2d 89, 319 N.E.2d 511.) Responsibility attaches to an accused "for those deaths which occur during a [forcible] felony and which are the foreseeable consequence of his initial criminal acts." (*People v. Brown* (1979), 70 Ill. App. 3d 922, 925-26, 388 N.E.2d 1253, 1256.) According to one of defendant's statements, the striking of Spates was part of the procedure by which the watch was forcibly removed from Spates' person. Robbery is not a specific intent crime, and neither defendant nor Wieland needed to have the intent

to deprive Spates of his property at the time the beating started in order for that conduct to be part of the offense of robbery. Considering Spates' age and physical condition, his death was a foreseeable consequence of the beating shown by the evidence. The evidence supported a determination that a felony murder occurred.

The evidence that defendant stood over Spates while Wieland was hitting him, and the evidence that defendant admitted striking some blows himself showed defendant's acts to be a contributing cause of the death, if that be a necessary element in a felony murder case. See *Hickman.*

The proof of defendant's guilt of robbery, involuntary manslaughter, and felony murder was sufficient. *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.

■ The State concedes that the convictions for robbery, battery, and involuntary manslaughter must be vacated because of our affirmance of the felony murder conviction. The State asserts that the conviction for aggravated battery may stand. We agree. As defendant admitted to administering several blows to Spates, separated by a time span, the battery involved was not necessarily the same act as the force used to commit robbery. The battery became an aggravated battery because Spates, the victim, was 60 years of age or older. (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(b)(10).) The aggravated battery was not an included offense of the predicate felony of robbery because each offense contained elements not common to the other (the age of the victim being 60 years or older and the taking of property by force). The aggravated battery conviction can properly stand.

Finally, we consider the propriety of the imposition of an extended-term sentence for aggravated battery. The legislation which provides for the imposition of extended-term sentences is section 5—5—3.2 of the Unified Code of Corrections, which states in part:

"Sec. 5—5—3.2. Factors in Aggravation. (a) The following factors shall be accorded weight in favor of imposing a term of imprisonment or may be considered by the court as reasons to impose a more severe sentence under Section 5—8—1 ***.

* * *

(b) the following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 upon any offender who was at least 17 years old on the date the crime was committed." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2);

and section 5—8—2(a) of the Code, which states in part:

"Sec. 5—8—2. Extended Term. (a) A judge shall not sentence

an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present. Where the judge finds that such factors were present, he may sentence an offender to the following: ***." Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(a).

The State maintains that the foregoing language merely works as a limitation upon imposing an extended term as to the most serious offense in the absence of aggravating factors but does not prohibit extended-term sentences for less serious offenses.

The defendant's position is supported by *People v. Walsh* (1981), 101 Ill. App. 3d 1146, 428 N.E.2d 937, and *People v. Winston* (1982), 106 Ill. App. 3d 673, 435 N.E.2d 1327. The State's is supported by *People v. Way* (1983), 115 Ill. App. 3d 198, 450 N.E.2d 43.

On its face, section 5—8—2(a) purports only to limit extended-term sentences for the most serious felony. However, in the absence of the language of section 5—8—2(a) there is no express statutory authority for an extended-term sentence. Section 5—5—3.2 speaks of imposing an extended-term sentence "under Section 5—8—2." However, in *People v. DeSimone* (1982), 108 Ill. App. 3d 1015, 439 N.E.2d 1311, the court noted that section 5—8—4(c)(2) of the Code (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(c)(2)) limits consecutive sentences to the sum of maximum terms authorized under section 5—8—2 for the two most serious felony offenses. This indicates an intent that more than one extended term may be imposed on the same defendant at the same time. We agree and conclude that multiple extended-term sentences may be imposed as here. *Dicta* in *People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520, did not take this language into consideration.

Accordingly, the convictions of defendant for felony murder and aggravated battery and the extended-term sentences imposed thereon are affirmed. All other convictions and sentences are vacated.

Affirmed in part, vacated in part.

MILLS, P.J., and MILLER, J., concur.