THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
STEVEN PALMER, Defendant-Appellant.

Second District   No. 2—88—0477

Opinion filed February 9, 1990.

REINHARD, J., dissenting.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Colleen M. Griffin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Steven Palmer, appeals from the May 5, 1988, order of the trial court. This order was entered after a hearing pursuant to section 5—2—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—2—4(a)) and sentenced defendant to involuntary commitment to the Department of Mental Health and Developmental Disabilities (Department of Mental Health) for natural life. We reverse and remand.

Palmer was tried for murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(1)) and armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2). A jury returned a verdict of guilty but mentally ill on both charges. The court conducted a sentencing hearing at which time the conviction of armed violence was vacated. The court found the crime to be brutal and heinous and sentenced Palmer to an extended term of natural life imprisonment on the murder conviction.

On appeal, this court reversed the conviction. This court found that a reasonable doubt existed as to defendant's sanity at the time of the offense. This court then issued the following mandate:

"Accordingly, the judgment of the circuit court is reversed and the cause remanded for entry of a judgment of not guilty by

reason of insanity. The trial court is then directed to proceed in accordance with section 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4), which controls such dispositions." *People v. Palmer* (1985), 139 Ill. App. 3d 966, 974.

On September 9, 1986, the State filed in the circuit court a "MOTION TO REINSTATE DEFENDANT'S CONVICTION OR, IN THE ALTERNATIVE, MOTION TO SET MATTER FOR TRIAL." The court heard arguments on the motions, and on October 3, 1986, denied the motions. The court, consistent with this court's mandate, entered a finding of not guilty by reason of insanity, transferred the defendant to the Department of Mental Health for evaluation and set the matter for hearing on November 18, 1986.

Prior to the completion of the evaluation, the State filed two motions with our supreme court: a motion for stay and a motion for leave to file a petition for a writ of *mandamus* and prohibition or, in the alternative, a motion for a supervisory order. On November 12, 1986, the supreme court granted the State leave to file a petition for writs of *mandamus* and prohibition. The supreme court also recalled the appellate court's mandate previously issued by this court.

On November 18, the trial court found that, pursuant to the November 12 supreme court's order, it lacked jurisdiction to proceed further. The court ordered the defendant to be returned to prison. On November 21, this court ordered its mandate to be recalled pursuant to the supreme court's order.

On September 21, 1987, our supreme court held that the State's motion for leave had been improvidently granted. The court denied the requests for writs and a supervisory order. *People ex rel. Foreman v. Nash* (1987), 118 Ill. 2d 90, 98.

On October 28, 1987, the State secured an indictment which repeated the charges of the original indictment. Defendant filed a motion to dismiss the indictment. On February 18, 1988, the court granted defendant's motion to dismiss. The State appealed the court's decision dismissing the October 18, 1987, indictment, and this court affirmed the circuit court's decision. *People v. Palmer* (1989), 188 Ill. App. 3d 378, 384.

Also on February 18, the circuit court entered an order finding defendant not guilty by reason of insanity. The court ordered the defendant to be remanded into the custody of the Department of Mental Health for evaluation.

The Department submitted an evaluation to the court prepared by Dr. A. Calabio in March 1988. Calabio concluded his evaluation by stat-

ing that the defendant was in need of inpatient mental health services.

On May 5, 1988, the court conducted a hearing pursuant to section 5—2—4(a). (Ill. Rev. Stat. 1987, ch. 38, par. 1005—2—4(a).) The State and counsel for defendant stipulated as to what Calabio would say if called to testify. Defendant objected to this testimony. Defendant expressed his disagreement with Calabio's findings and requested outpatient status through a veteran's hospital.

The court found that the defendant was subject to involuntary commitment under section 5—2—4 and the mental health code. The court also found that the crime was wantonly cruel and heinous and an extended-term sentence was appropriate. On May 5, 1988, the court sentenced the defendant to a natural life term of commitment. The court's order also provided that if the commitment for natural life was impermissible, then the term of commitment shall be 100 years, and, if a 100-year term was impermissible, then the term of commitment shall be 80 years. Defendant filed a timely notice of appeal from this order.

This court reissued its original mandate on September 15, 1988, by stating:

*"MANDATE*

BE IT REMEMBERED, that, to-wit: On the 31st day of December, 1985, an Opinion of the aforementioned Court was entered of record and in accordance with the views expressed in the attached Opinion the judgment of the Circuit Court of Lake County is reversed and the cause remanded for entry of a judgment of not guilty by reason of insanity. The trial court is then directed to proceed in accordance with section 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4) which controls such dispositions.

Reversed and remanded with directions."

Defendant presents three arguments on appeal. First, defendant contends that the circuit court proceedings committing him to the Department of Mental Health for natural life were void due to the trial court's lack of jurisdiction. Second, defendant contends that, if the court did have jurisdiction, it erred by not offering the defendant an independent examination and by not requiring the evaluating psychiatrist to appear in person to testify. Third, defendant contends that if the court had jurisdiction, it erred in setting the maximum term of commitment at natural life.

Defendant first argues that the court lacked jurisdiction to conduct the involuntary commitment proceedings. Defendant claims that the court was deprived of jurisdiction from the date that this court's mandate was recalled, November 12, 1986, to the date that this court reis-

sued its mandate, September 15, 1988. Therefore, any proceedings that occurred during this time period are void and any orders entered must be vacated.

■ It is clear that upon the filing of a notice of appeal the jurisdiction of the appellate court attaches *instanter* and, concomitantly, the trial court is deprived of jurisdiction. (*Daley v. Laurie* (1985), 106 Ill. 2d 33, 37; *People v. Baker* (1980), 85 Ill. App. 3d 661, 662.) It is equally clear that the appellate court retains jurisdiction of the cause until it issues its mandate, and the reviewing court's mandate revests the trial court with jurisdiction to do only that which is required by the mandate. (*Baker*, 85 Ill. App. 3d at 662.) If a trial court acts outside the scope of the mandate and, hence, beyond its jurisdiction, the trial court's order must be reversed and vacated. *Baker*, 85 Ill. App. 3d at 663.

In the case at bar, it is undisputed that the trial court's jurisdiction was divested on May 11, 1984, the date the notice of appeal was filed. This court issued its opinion and mandate on December 31, 1985. The mandate revested the trial court with jurisdiction to enter a finding of not guilty by reason of insanity and to proceed in accordance with section 5—2—4 of the Unified Code of Corrections. On October 3, 1986, the trial court entered a finding of not guilty by reason of insanity and set the matter for hearing on November 18. However, upon the State's motion, the supreme court recalled this court's mandate on November 12, 1986, and set the matter for hearing in the supreme court. This action, as the trial court correctly determined, deprived the trial court of jurisdiction in the matter.

■ The supreme court rendered its opinion on September 21, 1987. The court denied the State's motions. The judgment order stated: "Writs denied; Motion for supervisory order denied." The judgment order did not provide for this court's mandate to be reinstated. We find that, contrary to the State's argument, the supreme court's order did not automatically reinstate this court's mandate and thus revest the trial court's jurisdiction. There is nothing in the supreme court's order indicating that this court's mandate was reinstated. Both the supreme court and this court issued orders that expressly recalled the mandate, and a similar expression is necessary to reinstate the mandate. The trial court did not regain jurisdiction in this matter until this court issued its mandate on September 15, 1988. The trial court proceedings that occurred between November 12, 1986, and September 15, 1988, are void. The orders entered by the trial court during this time period are vacated.

■ The State urges that even if the circuit court lacked jurisdic-

tion, this court should invoke its original jurisdiction (see Ill. Rev. Stat. 1987, ch. 37, par. 32.1) and decide the remaining issues instead of remanding for another hearing. We find that it would be inappropriate for this court to decide the remaining issues pertaining to the correctness of the proceedings below. (See *People v. McBride* (1983), 114 Ill. App. 3d 75, 81.) The defendant is entitled to have a hearing pertaining to involuntary commitment to the Department of Mental Health before a court of competent jurisdiction.

There is one matter presented that we feel compelled to address. This specific issue has been addressed on two occasions by other districts with contrary results. The issue is whether natural life is a permissible "maximum sentence" for murder accompanied by exceptionally brutal or heinous behavior under section 5—2—4(b).

■ This court's original mandate directed the trial court to proceed pursuant to section 5—2—4 of the Unified Code of Corrections. Section 5—2—4(b) states:

"If the Court finds the defendant subject to involuntary admission *** the initial order for admission of a defendant acquitted of a felony by reason of insanity shall be for an indefinite period of time. Such period of commitment shall not exceed the maximum length of time that the defendant would have been required to serve, less credit for good behavior, before becoming eligible for release had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity." Ill. Rev. Stat. 1987, ch. 38, par. 1005—2—4(b).

In *People v. Larson* (1985), 132 Ill. App. 3d 594, 595, after the defendant was found not guilty by reason of insanity, the trial court, using the provisions of the extended-term statute, set the defendant's maximum period of criminal commitment at 80 years less credit for good behavior. The defendant argued that the court erred by using the extended-term statute to establish the maximum sentence that the defendant could have received had he been convicted of the crime of which he had been acquitted by reason of insanity. The State argued that, not only was the extended-term statute applicable, the court erred by not imposing a "sentence" of natural life, as that is the maximum sentence that the defendant could have received had he been convicted.

The reviewing court stated that a court cannot read a limitation into a statute which the legislature has not seen fit to establish. (*Larson*, 132 Ill. App. 3d at 596.) The court found that there was nothing in the plain language of the statute indicating that the words "maximum

sentence" are to be limited by the maximum sentence available under section 5—8—1 of the Unified Code of Corrections. (*Larson*, 132 Ill. App. 3d at 597.) The court then held the provisions of the extended-term statute did apply.

However, when determining the merits of the State's contention, the court did limit the "maximum sentence" available under section 5—2—4(b). The court stated:

"Courts will not construe a statute in such a way as to render part of the statute a nullity. [Citation.] The State's position would render superfluous that language in section 5—2—4(b) which automatically gives insanity acquittees credit for good behavior [citations], because such credit is not permitted when a term of natural life is imposed. [Citation.] Moreover, use of a natural life sentence would undermine the legislative objective that a definite outer perimeter to defendant's commitment period be set at the time the initial commitment order is issued. [Citation.] We find that a term of natural life is not a permissible 'maximum sentence' under section 5—2—4(b)." *Larson*, 132 Ill. App. 3d at 597-98.

In *People v. Cochran* (1988), 167 Ill. App. 3d 830, 831, the trial court, after finding defendant not guilty by reason of insanity, set the defendant's maximum period of commitment at natural life. The reviewing court stated:

"We may not alter the plain meaning of those words or read any limitations into the statute that do not exist. [Citation.] Section 5—2—4(b) does not qualify or limit the phrase 'maximum sentence' in any manner. By comparison, section 104—25(g)(4) of the Code of Criminal Procedure of 1963 [citation], pertaining to the maximum period of treatment of an unfit defendant, defines maximum sentence as that established by section 5—8—1, 'excluding any sentence of natural life.' If the legislature wished to impose similar limitations for persons found not guilty by reason of insanity, it could have easily done so. Since the legislature chose not to limit section 5—2—4(b), we will not do so either." (*Cochran*, 167 Ill. App. 3d at 832.)

In discussing the reasoning of the court in *Larson*, the *Cochran* court stated:

"Merely because good-time credit is not available for natural life sentences does not render the language of section 5—2—4(b) superfluous. The good-conduct credit is still applicable to insanity acquittees found to have committed offenses other than murder accompanied by exceptionally brutal or heinous behavior. If

we were to accept defendant's (and the First District's) position, we would have to ignore the language of section 5—8—1(a)(1)(c). When a defendant has previously been convicted of murder or is found guilty of murdering more than one victim, natural life imprisonment is mandatory. [Citation.] This is the sentence set by law under these circumstances. If faced with a defendant acquitted by reason of insanity of two murders, a court would have no choice but to set the defendant's commitment period at natural life. [Citation.] We therefore read the language of section 5—2—4(b) to mean an insanity acquittee is entitled to whatever good-time credit is permitted for that particular offense. Nor do we find that the imposition of a natural life sentence undermines the legislative objective of having a definite outer perimeter to a defendant's commitment period [citation]. A definite outer perimeter has been set, defendant's natural life. Defendant still has the possibility for early release if he ever should regain his sanity." *Cochran*, 167 Ill. App. 3d at 832-33.

We agree with both *Larson* and *Cochran* that the extended-term provisions of the sentencing scheme do apply when determining the maximum sentence available pursuant to section 5—2—4 of the Code of Corrections. However, we disagree with the reasoning set forth in *Larson* in determining that natural life is not an available sentence pursuant to section 5—2—4. We agree with *Cochan* that the plain language of the statute does not omit natural life as an available maximum sentence. We are expressing no opinion as to whether it was factually appropriate in this case to impose a sentence of natural life. We simply wish to point out that we feel commitment for natural life is an available sentencing alternative pursuant to section 5—2—4.

The circuit court did not have jurisdiction to conduct commitment proceedings pursuant to section 5—2—4 of the Unified Code of Corrections prior to the issuance of this court's mandate on September 15, 1988. The commitment of defendant was void. The judgment of the circuit court of Lake County is reversed, and the cause is remanded with instructions to proceed pursuant to section 5—2—4.

*Reversed and remanded with instructions.*

WOODWARD, J., concurs.

JUSTICE REINHARD, dissenting:
I disagree that the trial court proceedings were void because the trial court lacked jurisdiction.

This court issued its mandate in the original appeal in *People v. Palmer* (1985), 139 Ill. App. 3d 966, following the supreme court's denial of defendant's petition for leave to appeal (*People v. Palmer* (1986), 112 Ill. 2d 566). Thereafter, the appellate court was divested of jurisdiction in this case and could no longer recall the mandate pursuant to Supreme Court Rule 368(c) (107 Ill. 2d R. 368(c)). (See *People v. McCloskey* (1971), 2 Ill. App. 3d 892, 898.) The subsequent proceeding brought in the supreme court by a motion for leave to file a petition for an original writ of *mandamus* and for a writ of prohibition (107 Ill. 2d R. 381) and, alternatively, for a supervisory order (107 Ill. 2d R. 383) was an action separate and distinct from the original appeal to the appellate court. (See *People ex rel. Foreman v. Nash* (1987), 118 Ill. 2d 90.) Unless otherwise directed by our supreme court, which it was not, the appellate court was without jurisdiction to do anything relating to this proceeding. Thus, although the supreme court recalled the appellate court's mandate while considering the petition for the writs and supervisory order, the appellate court was not revested with jurisdiction to act in this proceeding.

Thus, the appellate court was without jurisdiction to recall the mandate, which had already been recalled by the supreme court, nor did it possess jurisdiction to later issue a mandate on September 15, 1988, after the supreme court issued its own mandate on the original action once it decided that the motions before it had been improvidently granted. (*People ex rel. Foreman*, 118 Ill. 2d at 98.) On this basis, I disagree with the majority's statement that the circuit court of Lake County regained jurisdiction once this court issued its mandate on September 15, 1988.

The question remains, however, whether the circuit court ever regained jurisdiction once the supreme court recalled the appellate court's mandate pending the supreme court's determination of the original action for issuance of the writs and for a supervisory order. It is apparent that this mandate was recalled on motion of the State's Attorney of Lake County for a stay of the mandate pending disposition of the original action. Once the original action was decided by the supreme court's opinion in *People ex rel. Foreman v. Nash* (1987), 118 Ill. 2d 90, wherein the court determined that the writs and the motion for supervisory order should be denied (118 Ill. 2d at 98-99), and the mandate on this opinion was subsequently issued by the supreme court, the appellate court's mandate, which had been recalled, was automatically reinstated in the circuit court of Lake County. This provided the circuit court jurisdiction to proceed, as it did. While the supreme court did not expressly reinstate the appellate court's mandate

in its opinion or mandate, there can be no other conclusion drawn as the supreme court denied, without reaching the merits, the writs and motion for supervisory order requested by the State's Attorney of Lake County and issued its mandate. The effect of the supreme court's decision and issuance of its mandate was to reinstate the proceedings in the circuit court. Matters which are implied may be considered embraced by the mandate. See *PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 308.

For the foregoing reasons, I cannot accept the reasoning of the majority that the circuit court of Lake County was without jurisdiction to conduct proceedings and enter an order of involuntary commitment and, accordingly, dissent from the reversal of the judgment below. On the merits of the remaining issues raised by defendant, I would affirm the circuit court.

Because I believe the majority has misconstrued the effect of the supreme court's decision and mandate, the State may wish to expedite review of this decision by moving in the supreme court for an order under Supreme Court Rule 383, as it is the supreme court's decision which the majority finds has failed to revest jurisdiction in the circuit court of Lake County and, presumably, would continue to have that effect until the issue of jurisdiction is resolved by that court.