(No. 69991.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. STEVEN PALMER, Appellee.

*Opinion filed March 12, 1992.—Rehearing
denied June 1, 1992.*

HEIPLE, J., joined by MILLER, C.J., concurring in part and dissenting in part.

Roland W. Burris and Neil F. Hartigan, Attorneys General, of Springfield, and Michael J. Waller and Fred L. Foreman, State's Attorneys, of Waukegan (Kenneth R. Boyle, Norbert J. Goetten, William L. Browers, David A. Bernhard, and Colleen M. Griffin, of the Office of the

State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

G. Joseph Weller, Deputy Defender, and Thomas A. Lilien, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

The appellate court, one justice dissenting, determined certain proceedings held pursuant to section 5—2—4 of the Unified Code of Corrections (the Code) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—2—4) in the circuit court of Lake County involving defendant, Steven F. Palmer, were void for lack of jurisdiction. (193 Ill. App. 3d 745.) The appellate court also concluded that the maximum period of involuntary commitment for an insanity acquittee could be based upon the extended-term sentencing statute of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2) and could include a maximum term of natural life (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)). This court allowed the State's petition for leave to appeal (134 Ill. 2d R. 315).

I

It is unnecessary for the purposes of this opinion to repeat the facts surrounding the offense. These facts are recounted in detail in *People v. Palmer* (1985), 139 Ill. App. 3d 966.

In April 1984, defendant was tried for murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(1)). A verdict of guilty but mentally ill was returned by the jury. At a sentencing hearing following the trial, the circuit court found the murder to be exceptionally brutal and heinous behavior indicative of wanton cruelty, and sentenced

defendant to an extended term of natural life imprisonment on the murder conviction.

On appeal, the appellate court found that a reasonable doubt existed as to defendant's sanity at the time of the offense and reversed the conviction. (*People v. Palmer* (1985), 139 Ill. App. 3d 966.) The appellate court issued the following mandate:

> "[T]he judgment of the circuit court is reversed and the cause remanded for entry of a judgment of not guilty by reason of insanity. The trial court is then directed to proceed in accordance with section 5—2—4 of the [Code], which controls such dispositions." (*Palmer*, 139 Ill. App. 3d at 974.)

The State filed a petition for rehearing with the appellate court, which was denied. The State's petition for leave to appeal from the appellate court's decision was denied by this court on June 3, 1986. The mandate of the appellate court was filed in the circuit court on July 10, 1986.

On September 9, 1986, the State filed a motion to reinstate defendant's conviction or, in the alternative, a motion to set the matter for a new trial. The motion was denied by the circuit court on October 3, 1986. At that time, the circuit court entered a finding of not guilty by reason of insanity and ordered defendant to be transferred to the Illinois Department of Mental Health and Developmental Disabilities (the Department of Mental Health) for an evaluation as to whether he was subject to involuntary admission or in need of mental health services. The matter was set for a hearing on November 18, 1986.

Before the evaluation of defendant was completed, the State filed two motions with this court: a motion for stay and a motion for leave to file a petition for writs of *mandamus* and prohibition or, in the alternative, a motion for supervisory order. This court granted the State

leave to file the writs on November 12, 1986. (People *ex rel.* Foreman v. Nash, No. 64223.) On the same day, this court recalled the mandate of the appellate court, and set the case to be heard at the January 1987 term.

Because the appellate court mandate was recalled by this court, the circuit court determined that it lacked jurisdiction to proceed further. On November 18, 1986, the circuit court ordered defendant transferred from the Department of Mental Health to the Illinois Department of Corrections. On November 24, 1986, the appellate court ordered "the mandate of this Court heretofore issued on July 9, 1986, is recalled pursuant to Supreme Court order."

On September 21, 1987, this court issued its opinion in *People ex rel. Foreman v. Nash* (1987), 118 Ill. 2d 90, which found the State's motion for leave to file writs and motion for supervisory order had been improvidently granted. This court held that the writs or the motion for supervisory order would not be "an appropriate remedy because it would in effect constitute an additional appeal to which the People are not entitled" (*Nash*, 118 Ill. 2d at 98-99), and denied the request for writs or supervisory order.

The State secured a new indictment against defendant on October 28, 1987, which repeated the charges of the original indictments of January 6, 1984. The circuit court granted defendant's motion to dismiss the new indictment on February 18, 1988. The dismissal of the new indictment was appealed by the State to the appellate court, which affirmed the circuit court's decision. *People v. Palmer* (1989), 188 Ill. App. 3d 378.

On February 18, 1988, the circuit court entered an order finding defendant not guilty by reason of insanity. The circuit court ordered defendant remanded to the Department of Mental Health and ordered an evaluation of defendant to determine whether he was subject to invol-

untary admission or in need of mental health services. The Department of Mental Health submitted an evaluation to the circuit court by Dr. A. Calabio in March 1988. Dr. Calabio concluded defendant was in need of inpatient mental health services.

The circuit court held a hearing pursuant to section 5—2—4 on May 5, 1988. Section 5—2—4 governs proceedings after a defendant has been acquitted of an offense by reason of insanity. Counsel for defendant and the State stipulated as to what Dr. Calabio would say if called to testify. Defendant objected to the testimony and stated his disagreement with Dr. Calabio's findings. Defendant testified he was no longer mentally ill and requested outpatient status through a Veteran's Administration hospital.

The circuit court determined that defendant was subject to involuntary admission. Pursuant to section 5—2—4(b), the circuit court found that, had defendant been convicted, he would have been eligible for natural life in prison, as the circuit court found the crime to be "wanton, cruel, to indicate wanton cruelty, it was heinous ***. Probably a textbook case of wanton cruelty." Additionally, the circuit court provided that if commitment for natural life was impermissible, the term of commitment shall be 100 years, and, if the 100-year term was impermissible, the term of commitment shall be 80 years. Defendant then filed a notice of appeal to the appellate court from the circuit court's order.

On September 15, 1988, the appellate court reissued its original mandate of December 31, 1985, which reversed the judgment of the circuit court and "remanded for entry of a judgment of not guilty by reason of insanity. The trial court is then directed to proceed in accordance with section 5—2—4 of the [Code]. Reversed and remanded with directions."

On February 9, 1990, the appellate court issued an opinion which reversed the May 5, 1988, order of the circuit court which committed defendant, as an insanity acquittee, to an extended term of natural life. The appellate court concluded the circuit court lacked jurisdiction to conduct any proceedings concerning defendant between November 12, 1986, the day this court recalled the mandate of the appellate court filed with the circuit court on July 10, 1986, and September 15, 1988, the day the appellate court reissued its mandate of July 10, 1986, to the circuit court.

According to the appellate court, jurisdiction was divested from the circuit court on May 11, 1984, when defendant filed his appeal from his sentence of natural life for the murder conviction. Jurisdiction was revested in the circuit court on December 31, 1985, when the appellate court reversed defendant's murder conviction, issued its mandate which remanded the cause with instructions to enter a finding of not guilty by reason of insanity, and instructed the circuit court to proceed in accordance with section 5—2—4. The circuit court was vested with jurisdiction on October 3, 1986, to enter a finding of not guilty by reason of insanity and to set the matter for hearing on November 18, 1986. The circuit court was divested of jurisdiction when this court, on November 12, 1986, granted the State's motions for leave to file a petition for writs or supervisory order. At that time, this court expressly recalled the appellate court's mandate which had directed the circuit court to proceed in accordance with section 5—2—4.

When this court denied the State's motions in *Nash*, on September 21, 1987, the judgment order stated: "Writs denied; Motion for supervisory order denied." The judgment order did not provide for the reinstatement of the appellate court's mandate. According to the appellate court, jurisdiction did not revest in the circuit

court until the appellate court affirmatively reissued its mandate on September 15, 1988.

In its opinion, the appellate court rejected the State's argument that the order of this court in *Nash* automatically reinstated the appellate court's mandate and thus revested jurisdiction in the circuit court. The appellate court determined that either this court or the appellate court had to expressly reinstate the recalled mandate before jurisdiction in the circuit court could revest. The appellate court stated that the involuntary commitment proceedings were void and vacated the orders entered by the trial court.

The dissent disagreed that the proceedings held by the circuit court between November 12, 1986, and September 15, 1988, were void for lack of jurisdiction. According to the dissent, once the appellate court issued its mandate in the original appeal in *People v. Palmer* (1985), 139 Ill. App. 3d 966, after this court denied the State's petition for leave to appeal, the appellate court was divested of jurisdiction and had no authority to recall the mandate on November 24, 1986. The dissent characterized the motions for leave to file a petition for writs and supervisory order initiated by the State as separate and distinct actions from the original appeal to the appellate court.

The dissent concluded that jurisdiction revested in the circuit court once this court issued its opinion and mandate in *Nash* because "the appellate court's mandate, which had been recalled, was automatically reinstated in the circuit court." (193 Ill. App. 3d at 753 (Reinhard, J., dissenting).) The dissent stated:

"While the supreme court did not expressly reinstate the appellate court's mandate in its opinion or mandate, there can be no other conclusion drawn as the supreme court denied, without reaching the merits, the writs and motion for supervisory order requested by the State's At-

torney of Lake County and issued its mandate. The effect of the supreme court's decision and issuance of its mandate was to reinstate the proceedings in the circuit court. Matters which are implied may be considered embraced by the mandate. See *PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 308." 193 Ill. App. 3d at 753-54 (Reinhard, J., dissenting).

The State advances the same argument as the dissent. The State acknowledges that this court's opinion in *Nash* and this court's October 20, 1987, order did not expressly provide for automatic reinstatement of the appellate court's mandate, but concludes that "the only reasonable inference is that [the mandate of the appellate court] was reinstated, as this Court found that the State's motions had been improvidently granted." Both the State and the dissent rely on *PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 308, which states: "In construing the language [in the mandate], matters which are implied may be considered embraced by the mandate."

We disagree that *PSL Realty* is authority for jurisdiction revesting automatically in the circuit court by implication from this court's opinion in *Nash*. The existence of jurisdiction was not at issue in *PSL Realty*; at issue in *PSL Realty* was the correctness of the trial court's action on remand. The court in *PSL Realty* noted that the resolution of whether the actions of the trial court were correct had:

> "to be determined from the appellate court's mandate, as opposed to the appellate court opinion. [Citations.] However, if the direction is to proceed in conformity with the opinion, then, of course, the content of the opinion is significant. [Citations.] In construing the language, matters which are implied may be considered embraced by the mandate. (*Chicago Ry. Equipment Co. v. National Hollow Brake Beam Co.* (1909), 239 Ill. 111.)" *PSL Realty*, 86 Ill. 2d at 308.

In *Chicago Railway*, the appellant argued that a certain act by the trial court was not authorized by a prior decision of a reviewing court. The remanding order in *Chicago Railway* was lengthy and contained detailed directions to the trial court. The language being construed in the remanding order in *Chicago Railway* was concerned with one of several actions the trial court was being instructed to follow. At issue in *Chicago Railway* was not whether the trial court had jurisdiction to order the action done, but whether the action taken was in conformance with the remanding order. The only question before the reviewing court remained whether "the decree of the circuit court [was] in accordance with the mandate and directions of [the reviewing] court." *Chicago Ry. Equipment Co. v. National Hollow Brake Beam Co.* (1909), 239 Ill. 111, 115.

In the case at bar, this court affirmatively recalled the mandate of the appellate court in response to the State's motion for stay; this court did not simply order proceedings stayed in the circuit court pending resolution of the State's petition and motion. There was no remandment; there were no directions to the circuit court to proceed in conformity with the opinion either of this court in *Nash* or of the appellate court in *People v. Palmer* (1985), 139 Ill. App. 3d 966.

When a mandate issues which remands a cause to the trial court for proceedings consistent with the opinion issued by the reviewing court, the trial court must look to the opinion for directions and will of necessity construe the language of the opinion when needed. In such an instance, *PSL Realty* may reasonably be said to allow the trial court to embrace matters "not expressly stated in the remanding order *** [which are] the clear and necessary implication from the language employed in the remanding order of [the reviewing] court." (*Chicago Ry.,*

239 Ill. at 115.) When a mandate issues which fails to remand a cause to the trial court, and which simply states that writs and motion for supervisory order are denied, it cannot reasonably be said that it embraces the revesting of jurisdiction in the trial court by "clear and necessary implication." (*Chicago Ry.*, 239 Ill. at 115.) Unless and until further action is taken by the reviewing court, jurisdiction does not revest in the trial court, but remains in the reviewing court.

Applying these principles to the case at bar, we hold that jurisdiction did not revest, by implication or otherwise, in the circuit court following the issuance by this court of its opinion in *Nash*. The circuit court acted without jurisdiction when it committed defendant to a maximum period of natural life, and such commitment period is vacated. Jurisdiction has remained in this court, and we hereby remand this cause to the circuit court with directions to proceed in conformity with the mandate of the appellate court filed on July 10, 1986, and with this opinion.

II

The appellate court determined that the maximum period of commitment for an insanity acquittee could be based upon the extended-term statute and could include natural life. Whether natural life is a permissible maximum period of commitment for an insanity acquittee pursuant to section 5—2—4(b) has been answered by other appellate districts with contrary results. The court in *People v. Larson* (1st Dist. 1985), 132 Ill. App. 3d 594, concluded natural life was not a permissible maximum period of commitment; the court in *People v. Cochran* (5th Dist. 1988), 167 Ill. App. 3d 830, concluded it was. Both the *Larson* and *Cochran* courts concluded that the maximum period of commitment could be based upon the extended-term statute.

The State argues that the extended-term statute, including the maximum period of natural life, is available as a maximum period of commitment for an insanity acquittee. Defendant argues that an insanity acquittee's maximum period of commitment should not be set by reference to the extended-term statute.

When a defendant is found not guilty by reason of insanity, the trial court is to order the defendant to "the Department of Mental Health *** for an evaluation as to whether he is subject to involuntary admission or in need of mental health services." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—2—4(a).) The trial court shall hold a hearing to determine if the individual is: subject to involuntary admission, in need of mental health services on an inpatient or outpatient basis, or not in need of mental health services. Ill. Rev. Stat. 1987, ch. 38, par. 1005—2—4(a).

Pursuant to section 5—2—4(b) of the Code, if a defendant is found to be subject to involuntary admission, the defendant must be committed to the Department of Mental Health for an indefinite term. Section 5—2—4(b) requires the trial court to set a maximum period for the involuntary commitment which:

"shall not exceed the maximum length of time that the defendant would have been required to serve, less credit for good behavior, before becoming eligible for release had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity. The Court shall determine the maximum period of commitment by an appropriate order." Ill. Rev. Stat. 1987, ch. 38, par. 1005—2—4(b).

A defendant convicted of a criminal offense may be sentenced to an extended term if factors set forth in paragraph (b) of section 5—5—3.2 of the Code are found to be present. (See Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(a).) Paragraph (b) of section 5—5—3.2 provides for the imposition of an extended-term sentence

under section 5—8—2 "[w]hen a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(2).) We do not reach the issue whether natural life is a permissible maximum period of commitment pursuant to section 5—2—4(b) because we conclude, for the reasons stated herein, that a trial court may not base a maximum commitment period for an insanity acquittee on the extended-term statute.

Several districts of the appellate court have concluded that the maximum period of commitment for an insanity acquittee may be based upon the extended-term sentencing provisions of the Code. (193 Ill. App. 3d 745 (2d District); *People v. Winston* (1st Dist. 1989), 191 Ill. App. 3d 948; *People v. Cochran* (5th Dist. 1988), 167 Ill. App. 3d 830; *People v. Thomas* (1st Dist. 1988), 168 Ill. App. 3d 113; *People v. Larson* (1st Dist. 1985), 132 Ill. App. 3d 594.) Because the districts have followed the rationale set forth in *Larson* in reaching their conclusions that the maximum period of commitment may be based upon the extended-term statute, we will examine that case in detail.

The *Larson* court reached the conclusion that an insanity acquittee's maximum period of commitment could be based upon the extended-term statute as a result of statutory construction. The court stated that in ascertaining the intent of the legislature, a court should look first and foremost to the terms of the statute. (*People v. Robinson* (1982), 89 Ill. 2d 469, 475.) The *Larson* court noted that section 5—2—4(b) provides a formula for computing the maximum period of involuntary commitment: the trial court will refer to the existing sentencing scheme to determine the most punitive sanction which could be imposed for the most serious crime charged,

which is then reduced by credit for good behavior. *In re Commitment of Guy* (1984), 126 Ill. App. 3d 267, 269.

The court in *Larson* compared the maximum sentence available under the extended-term statute (in *Larson*, a term of 80 years), with the maximum sentence under section 5—8—1 (a term of 40 years). According to the *Larson* court, the maximum sentence under section 5—8—1:

> "simply is not the 'maximum sentence' that can be given under the section 5—2—4(b) formula. Moreover, nothing in the plain language of the statute indicates that the words 'maximum sentence' are to be limited by the maximum sentence available under section 5—8—1 of [the Code]. In the event that the legislature had intended to impose such a limitation, it could have clarified this statute via express language to that effect. Absent any express intent to the contrary, we must read section 5—2—4(b) to be in accord with the ordinary use and meaning of its terms." *Larson*, 132 Ill. App. 3d at 597.

While, as correctly noted in *Larson*, a "court may not read a limitation into a statute which the legislature has not seen fit to enact nor may it, by subtle construction, alter the plain meaning of the words employed" (*Larson*, 132 Ill. App. 3d at 596), neither may a court read a limitation, which the legislature has seen fit to enact, out of a statute, by subtle construction or otherwise. The overriding consideration in construing statutory enactments is to give effect to the intent of the legislature. (*People v. Scott* (1974), 57 Ill. 2d 353, 358.) To this end, the entire statute must be considered (*People ex rel. Morrison v. Sielaff* (1974), 58 Ill. 2d 91, 93), as well as "the evil to be remedied and the object to be obtained" (*People ex rel. Simpson v. Funkhouser* (1944), 385 Ill. 396, 403).

In determining that a trial court may base an insanity acquittee's maximum period of commitment upon the ex-

tended-term statute, the court in *Larson* looked only to the length of time which a convicted defendant might receive under section 5—8—1 and section 5—8—2 when it determined that nothing in the "plain language" of section 5—2—4(b) indicated that the words "maximum sentence" of section 5—2—4(b) should be limited to the maximum sentence available under section 5—8—1. It was within this limited context the *Larson* court concluded that the legislature intended a trial court to be free to base a maximum period of commitment for an insanity acquittee upon the extended-term statute.

This limited reference is reflected in *Larson*'s progeny: in *Winston*, the court noted "there is no history of the extended-term statute specifically reflecting the legislative intent that the statute be applicable to commitments under section 5—2—4(b), *** neither is there anything in the plain language of section 5—2—4(b) indicating that the words 'maximum sentence' were intended to be limited by *** section 5—8—1 ***." (*Winston*, 191 Ill. App. 3d at 958.) After acknowledging this dearth of legislative history, the court in *Winston* concluded: "Our view here, as in *Larson*, is that had the legislature intended to impose such a limitation, the statute would have included express language setting forth the limitation." *Winston*, 191 Ill. App. 3d at 958.

In the case at bar, section 5—2—4(b) requires the court to refer to the existing sentencing scheme in order to determine the maximum length of time the defendant would have been required to serve before becoming eligible for release had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—2—4(b).) It is clear that the trial court may commit an insanity acquittee to a maximum period by reference to section 5—8—1. In order to commit an insanity acquittee by reference to the ex-

·tended-term statute, however, the trial court must first find that the insanity acquittee's offense comes within the statutory requirements for application of section 5—8—2(a). Section 5—8—2(a) refers to the factors in aggravation set forth in paragraph (b) of section 5—5—3.2. Section 5—5—3.2(b)(2) requires that, in order for an extended-term sentence to be applicable, the trial court must find that the offense is accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.

As noted by this court in *People v. La Pointe* (1981), 88 Ill. 2d 482, 501: " 'Heinous' is defined by Webster's Third New International Dictionary (unabridged) as 'hatefully or shockingly evil: grossly bad: enormously and flagrantly criminal'; 'brutal' includes 'grossly ruthless,' 'devoid of mercy or compassion: cruel and coldblooded.' " The terms "wanton" and "cruelty" were discussed in *People v. Jones* (1979), 73 Ill. App. 3d 99, 103:

> "In the American Heritage Dictionary of the English Language (1969), 'cruelty' is defined as 'something that causes pain or suffering.' And Webster's Third New International Dictionary (1976), defines 'cruelty' as a 'disposition to inflict pain or suffering or to enjoy its being inflicted.' But the term 'wanton' was defined as follows by the Illinois Supreme Court in the case of *Bartolucci v. Falleti* (1943), 382 Ill. 168, 174, 46 N.E.2d 980, 983:
>
> > 'Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury.' "

The insanity defense is defined as follows:

> "A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to

appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Ill. Rev. Stat. 1987, ch. 38, par. 6—2(a).

A defendant who successfully asserts an insanity defense "is not criminally responsible for [his] conduct." (Ill. Rev. Stat. 1987, ch. 38, par. 6—2(a).) The insanity defense "adhere[s] to the fundamental principle that a person is not criminally responsible for an involuntary act. *** [T]he insanity defense exculpates a person whose volition is so impaired *** that he is substantially incapable of conforming his conduct to the law. *** [The insanity defense is a] theor[y] at the disposal of a defendant whose volition to control or prevent his conduct is at issue." (*People v. Grant* (1978), 71 Ill. 2d 551, 558-59.) As noted by the appellate court in *People v. Clark* (1981), 102 Ill. App. 3d 414, 417: "The law has long expressed the deep commitment of society to avoid the injustice of convicting a person who is insane. To that end, the criminal law is made to apply only to those who can be held responsible for their conduct."

Defendant contends that, given the nature of the insanity defense, an insanity acquittee's conduct may not be evaluated in terms of wanton cruelty. Defendant argues that an insanity acquittee cannot be considered to have consciously chosen to inflict pain or suffering, or to have been capable of consciously realizing that such infliction was wrong. We agree. The successful assertion of the insanity defense precludes a finding that the insanity acquittee was conscious of his conduct such that the requisite finding that the insanity acquittee's offense was indicative of wanton cruelty could be made.

A court is not free to rewrite legislation, or to ignore an express requirement contained in a statute. The *Larson* court, by failing to consider whether an insanity acquittee's offense may ever satisfy the prerequisites for application of the extended-term statute, effectively re-

wrote section 5—5—3.2(b)(2) to require only brutal or heinous behavior before a court may apply the extended-term statute, reading out of the statute the requirement that such behavior be indicative of wanton cruelty.

According to the State, the fact that defendant successfully asserted the insanity defense "does not detract from the fact that the offense comes within the statutory language of 'brutal or heinous behavior indicative of wanton cruelty.' See [*Larson*]. Application of the extended-term statute is determined by the 'offense' rather than by the extent or nature of defendant's participation. *Larson* [132 Ill. App. 3d at 598]." The State, as well as *Larson*'s progeny, relies on *Larson* as authority that the mental state of an insanity acquittee is irrelevant when it comes to determining whether the insanity acquittee's offense is brutal or heinous behavior indicative of wanton cruelty. A close reading of *Larson* shows this reliance to be misplaced.

After having determined, based on statutory construction, that an insanity acquittee may be committed to a maximum period based upon the extended-term statute, the court in *Larson* addressed a separate argument advanced by the defendant. The defendant in *Larson* contended that the "utilization of the extended-term statute constituted punishment because the statute was designed primarily to enhance the punishment of the guilty." (*Larson*, 132 Ill. App. 3d at 598.) The *Larson* court rejected this argument and stated:

> "[C]haracterization of defendant's conduct as 'exceptionally brutal or heinous behavior indicative of wanton cruelty' did not indirectly punish defendant, who was not criminally responsible for that conduct. Application of the extended-term statute is determined by the 'offense' rather than by the extent or nature of defendant's participation (*People v. Gray* (1980), 87 Ill. App. 3d 142, 153, ***) ***." *Larson*, 132 Ill. App. 3d at 598.

The court in *Gray*, relied upon in *Larson*, did not, however, address the issue whether the offense of an insanity acquittee could come within the statutory definition of exceptionally brutal or heinous behavior indicative of wanton cruelty. *Gray* involved, *inter alia*, whether a defendant convicted of criminal offenses under the theory of accountability could be sentenced to an extended term where the trial court found the offenses to be accompanied by brutal or heinous behavior indicative of wanton cruelty.

The defendant in *Gray* argued that in light of her age, mental capacity, lack of prior record, and lack of participation in the crimes, her conduct was not such that an extended sentence was proper. In response to this argument, the court in *Gray* stated: *"[T]he application of the [extended-term] statute is determined by the 'offense' rather than by the extent or nature of the offender's participation* \*\*\*. In view thereof and because we have found [the defendant] legally accountable for the offenses, we cannot say that the extended sentences given" the defendant were inappropriate. (Emphasis added.) *People v. Gray* (1980), 87 Ill. App. 3d 142, 153.

The above-emphasized language in *Gray*, cited in *Larson*, has been interpreted by *Larson*'s progeny as authority for a trial court to completely disregard the state of mind of an insanity acquittee when determining the maximum period of commitment pursuant to section 5—2—4(b). (See *Thomas*, 168 Ill. App. 3d at 122; *Winston*, 191 Ill. App. 3d at 956.) In *Thomas*, the court stated: "[I]n deciding whether to impose an extended-term sentence, the court is to look at the offense itself." (*Thomas*, 168 Ill. App. 3d at 122, citing *People v. Clay* (1984), 124 Ill. App. 3d 140.) The court in *Thomas* opined that *Clay* supported the proposition

that it is the offense itself, and not the defendant's state of mind at the time of the offense, which is the only relevant factor in determining whether an offense meets the requirements of being exceptionally brutal or heinous behavior indicative of wanton cruelty. *Thomas*, 168 Ill. App. 3d at 123.

In *Clay*, the appellate court stated:

"[W]e have consistently held that because the application of the extended-term statute is determined by the offense, not by the extent or nature of the offender's participation therein, the fact that a defendant is convicted under the theory of accountability or that his participation in the crime was less than that of his co-offenders does not preclude the imposition of an extended sentence upon him. *People v. Rogers* (1984), 122 Ill. App. 3d 384; *People v. Rowe* (1983), 115 Ill. App. 3d 322, 450 N.E.2d 804; *People v. Tibbs* (1981), 103 Ill. App. 3d 73, 430 N.E.2d 681; *People v. Gray* (1980), 87 Ill. App. 3d 142, 408 N.E.2d 1150." (*Clay*, 124 Ill. App. 3d at 154.)

Each of the above-cited cases in *Clay* concerned the applicability of the extended-term statute where a defendant was found guilty of a criminal offense under the theory of accountability.

The mental state of a defendant convicted of a criminal offense under the theory of accountability was not made irrelevant by *Gray* for purposes of determining whether the offense was exceptionally brutal or heinous behavior indicative of wanton cruelty. One is legally accountable for the acts of another when:

" 'Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense.' Ill. Rev. Stat. 1977, ch. 38, par. 5—2(c)." (*Gray*, 87 Ill. App. 3d at 147.)

One cannot be found guilty of an offense under an accountability theory unless that person has the *intent* to promote or facilitate the commission of the offense. It is in this context that application of the extended-term statute "is determined by the 'offense' rather than by the extent or nature of the offender's participation." *Gray*, 87 Ill. App. 3d at 153.

When the *Larson* court stated that the application of the extended-term statute is determined by the "offense" rather than by the extent or nature of the defendant's participation, it did so not in order to determine whether the extended-term statute was applicable to insanity acquittees, but in order to explain why utilization of the extended-term statute in section 5—2—4(b) proceedings did not constitute "punishment" of a defendant who has been found not guilty by reason of insanity.

We reject the proposition that a trial court is required to focus exclusively on the conduct of an insanity acquittee, turning a blind eye on the insanity acquittee's mental state or "the extent or nature of the offender's participation," in determining whether an insanity acquittee's offense can meet the statutory requirement of section 5—5—3.2(b)(2).

The mental state of a convicted defendant is not an irrelevant factor in the determination whether an offense is accompanied by brutal or heinous behavior indicative of wanton cruelty. For example, such factors as history of criminal activity, attitude, presence or absence of remorse, and premeditation have been considered. (*People v. Andrews* (1989), 132 Ill. 2d 451.) Given the nature of the insanity defense, an insanity acquittee's conduct may not be held to be indicative of wanton cruelty. Because the statutory requirement of section 5—5—3.2(b)(2) is not satisfied in the case of an

insanity acquittee, the maximum period of commitment of the insanity acquittee pursuant to section 5—2—4(b) cannot be based upon the extended-term statute.

The conclusion that the conduct of an insanity acquittee cannot be considered to be indicative of wanton cruelty for purposes of the application of the extended-term statute in section 5—2—4(b) proceedings is not inconsistent with the purposes which lie behind the imposition of involuntary commitment. "[T]he purpose of commitment following an insanity acquittal is to treat the individual's mental illness, and at the same time protect him and society from his potential dangerousness." *People v. Williams* (1986), 140 Ill. App. 3d 216.

As noted in *Winston*, "there is no correlation between the seriousness of an offense and the length of time necessary for recovery; an insanity acquittee's confinement is based solely upon his continuing illness and the danger he poses to the community. *Thomas*, 168 Ill. App. 3d at 121, citing *Jones v. United States* (1983), 463 U.S. 354, 368-69, 77 L. Ed. 2d 694, 708, 103 S. Ct. 3043, 3051-52 ***." (*Winston*, 191 Ill. App. 3d at 956.) The insanity acquittee who has been involuntarily committed "is entitled to be released when he has recovered his sanity and is no longer dangerous to society, even if this is prior to the maximum term of involuntary commitment set by the trial court. *** [I]f the acquittee has not recovered from his mental illness by the time he has reached his maximum term of commitment, he shall be subject to a 'civil' commitment hearing (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4(i)) since an acquittee's hypothetical maximum sentence, as calculated by the trial court, does not provide the constitutional limit of this person's commitment." *People v. Hampton* (1983), 121 Ill. App. 3d 273, 277, citing *Jones v. United States* (1983), 463 U.S. 354, 77 L. Ed. 2d 694, 103 S. Ct. 3043.

This court may not render superfluous the requirement that, in order to impose an extended-term sentence, an insanity acquittee's offense must be brutal or heinous behavior indicative of wanton cruelty. The need to protect society from an insanity acquittee, whose maximum period of commitment pursuant to section 5—2—4(b) has expired, who has failed to recover from his mental illness, and who continues to pose a danger to the community, must be met by resort to civil commitment proceedings.

Defendant raises several other issues involving the propriety of the proceedings pursuant to section 5—2—4(b). Because of our disposition of this case, we find it unnecessary to address these issues.

In summary, the circuit court lacked jurisdiction to conduct proceedings pursuant to section 5—2—4 and such proceedings are hereby rendered void. The maximum period of commitment for an insanity acquittee may not be based upon the extended-term statute. The cause is remanded to the circuit court. The mandate of the appellate court filed on July 10, 1986, is hereby reinstated. Further proceedings are to be conducted in a manner not inconsistent with this opinion.

*Appellate court affirmed in part*
*and reversed in part.*

JUSTICE HEIPLE, concurring in part and dissenting in part:

Defendant Palmer was found not guilty of murder by reason of insanity. The circuit court determined, and the appellate court agreed, that the maximum period of commitment for an insanity acquittee could be based upon the extended-term sentencing statute (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2) and could include natural life (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)). In order to commit an insanity acquittee under

the extended-term sentencing statute, the acquittee must meet the statutory requirements under section 5—5—3.2(2) of the Unified Code of Corrections (the Code). That is to say, the court must find that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. The trial court so found and sentenced defendant accordingly.

The majority opinion holds that a trial court may not base a maximum commitment period for an insanity acquittee on the extended-term sentencing statute as an insanity acquittee cannot be conscious of his conduct "so that the requisite finding that the insanity acquittee's offense be indicative of wanton cruelty can be made." The majority reasons that an insanity acquittee is not criminally responsible for his conduct and, thus, he cannot be considered to have "consciously chosen to inflict pain or suffering."

Contrary to the majority's finding, an insanity acquittee's conduct can fall within the definition of "brutal," "heinous" and "indicative of wanton cruelty." None of these terms requires a specific mental state. These definitions are what the trier of fact perceives the crimes to be. That is to say, an objective standard. In this case, the trial court determined that defendant's conduct fell within this descriptive language. Accordingly, I dissent in part, as above indicated, and otherwise concur.

CHIEF JUSTICE MILLER joins in this partial concurrence and partial dissent.