THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES T. JORDAN, Defendant-Appellant.

Second District   No. 2—91—1006

Opinion filed February 4, 1993.

G. Joseph Weller, of State Appellate Defender's Office, and Josette Skelnik, of Law Offices of Josette Skelnik, both of Elgin, for appellant.

Roger T. Russell, State's Attorney, of Belvidere, and William M. Giffin, of Springfield (William L. Browers and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, James Jordan, was convicted by a jury of the unlawful possession of less than 15 grams of a substance containing heroin (Ill.

Rev. Stat. 1991, ch. 56½, par. 1401(c)(1)), the unlawful possession of a hypodermic needle or syringe (Ill. Rev. Stat. 1991, ch. 38, par. 22—50), and the unlawful possession of prescription forms (Ill. Rev. Stat. 1991, ch. 56½, par. 1406(b)(6)). The trial court sentenced defendant to three years' imprisonment and 364 days, concurrently. Defendant appeals only his conviction of the unlawful possession of prescription forms on the basis that the State failed to prove his guilt of that offense beyond a reasonable doubt. He does not appeal the other two judgments of conviction.

The State's evidence at trial showed that at 9:30 a.m., on August 13, 1990, defendant drove his Chevy Blazer through some construction barricades on I-90 westbound at the Fox River. A State trooper spotted defendant and his passenger outside of the Blazer, which was parked off the road about 20 miles from the scene of the accident. Defendant and his passenger were looking under the hood of the Blazer. Both of them appeared under the influence of some substance. The trooper took them to the nearest State Police headquarters to fill out an accident report.

The Blazer was inoperable because it had a punctured radiator, so it was towed to a nearby garage, where two State troopers conducted an inventory of the items on top of and in the Blazer. The inventory turned up a green leafy substance, and a brown substance, as well as over a thousand blank prescription forms with the name of a Minnesota clinic printed on them. Inside the Blazer, between the front seats, was a small safe. The State troopers obtained a search warrant for the safe. The search of the safe produced some hypodermic needles and syringes, some heroin, a couple of rubber tourniquets, and numerous blank prescription forms, some from "Oak Park Professional Center."

The State troopers testified that the prescription forms "looked official" and looked like the type used to buy controlled substances. The troopers admitted that they were not experts in pharmaceuticals or prescriptions.

At the close of the State's case, defendant objected to the State's motion to admit the prescription forms into evidence. Defendant argued that there was no evidence to show that the forms were actual or counterfeit prescription forms within the meaning of section 308 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1991, ch. 56½, par. 1308). The court overruled the objection. After the State rested, defendant moved for a directed verdict on the possession of prescriptions charge. Defendant argued that the forms lacked the requisites of an "official prescription" as defined in section 308 of the Controlled

Substances Act. The court denied the motion, stating, "a counterfeit is not required to be an exact copy of an original," and the court believed that it was for the jury to determine whether anyone could be deceived by the forms.

At the instructions conference, defense counsel argued that the State's proposed instruction on the possession of prescription forms should not be used. Specifically, defense counsel argued that the instruction did not define the term "counterfeit." The court gave the jury an instruction on the definition of "counterfeit," which read, "Counterfeit is to copy or imitate, without authority or right, and with a view to deceive or defraud, by passing the copy or thing forged for that which is original or genuine."

During closing argument, the prosecutor stated:

"The possession of the prescription forms, official blank prescription forms or counterfeit forms, these jury instructions the judge will read to you *** will tell you that in order for him to be found guilty of the possession of the prescription forms all I have to prove was that the defendant knowingly without authorization had in his possession official blank prescription forms or counterfeit forms.

You will receive these 1,500 some odd blank prescription forms or counterfeit forms. I submit that those are absolutely either official blank prescription forms or counterfeit prescription forms. And I submit he should be found guilty of that."

Defense counsel argued that the State had the burden to present evidence to show what constitutes an official prescription. Counsel further argued that the blank forms were not prescription forms. In rebuttal, the prosecutor argued that the jury could use its everyday experience to determine whether the forms were official prescription forms.

After defendant was convicted, he moved for judgment notwithstanding the verdict. This motion argued the same grounds as the motion for a directed verdict. The court also denied this motion. Following sentencing, defendant timely appealed.

■ We first address the State's argument that this appeal is moot. According to the State, defendant already served his sentence for the possession of prescriptions offense. Defendant responds that the State's argument is flawed in two respects. First, defendant asserts that the conviction at issue is a felony, and he was sentenced to three years. Second, defendant maintains that it does not matter what sentence was imposed because he is not attacking the sentence. Because we agree with defendant's second assertion, we need not de-

termine whether defendant was sentenced to a felony term or whether that sentence applied only to the heroin conviction. "Although an appeal of a sentence is rendered moot when the sentence has been served [citations], nullification of a conviction may have important consequences to a defendant." (*People v. Lynn* (1984), 102 Ill. 2d 267, 272-73.) Thus, the completion of a sentence does not render the appeal of a conviction moot. *Lynn*, 102 Ill. 2d at 273.

■ Defendant contends that his conviction of the unlawful possession of official or counterfeit prescription forms must be reversed because the State failed to prove beyond a reasonable doubt that the forms were either official prescription forms or counterfeit forms. Defendant first refers us to section 406(b)(6) of the Controlled Substances Act (Act), which states that it is unlawful "to possess without authorization, *official* blank prescription forms or counterfeit prescription forms." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 56½, par. 1406(b)(6).) According to defendant, the prescription forms are those described in section 308 of the Act, which provides:

> "Every practitioner who issues a prescription for a controlled substance in Schedule II, which is a narcotic drug listed in Section 206 of this Act; or which contains any quantity of amphetamine or methamphetamine, their salts, optical isomers or salts of optical isomers; phenmetrazine and its salts; gluthethimide; pentazocine; or which is hereafter determined to be a 'designated product,' as defined in Section 102 of this Act, shall issue such prescription on *official* prescription blanks which shall be issued by the [Illinois] Department [of Alcoholism and Substance Abuse] except as otherwise provided in this Act. The prescription blanks issued by the Department shall be in serial numbered groups of 100 blanks, each in triplicate, and shall be furnished upon payment of a reasonable non-refundable application fee to such practitioner and such prescription blanks shall not be transferable. The prescription blanks shall be printed on distinctive paper, serial number of the group being shown on each blank and also each blank being serially numbered. No more than one such prescription group shall in any case be issued or furnished by the Department to the same prescriber at one time." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 56½, par. 1308.)

Defendant argues that because none of the forms in evidence had serial numbers or were in triplicate, under the statute, they were not "official prescription blanks," nor were they capable of deceiving anyone that they were such official forms.

■■ When interpreting a statute, a court must construe it to effect the intent of the legislature, which includes considering the provision as part of the entire statute and the purpose of the legislation. (*People v. Palmer* (1992), 148 Ill. 2d 70, 85.) The legislative intent of the Controlled Substances Act includes: "(1) limit access of such substances only to those persons who have demonstrated an appropriate sense of responsibility and have a lawful and legitimate reason to possess them; (2) deter the unlawful and destructive abuse of controlled substances; (3) penalize most heavily the illicit traffickers or profiteers of controlled substances ***; [and] (4) acknowledge the functional and consequential differences between the various types of controlled substances and provide for correspondingly different degrees of control over each of the various types." (Ill. Rev. Stat. 1991, ch. 56½, par. 1100.) The Act defines a "Controlled Substance" as one of the substances listed in schedule II of the Act. (Ill. Rev. Stat. 1991, ch. 56½, par. 1102(f).) Schedule II substances, unlike those of schedule I, have some medical use. Compare Ill. Rev. Stat. 1991, ch. 56½, par. 1203, with Ill. Rev. Stat. 1991, ch. 56½, par. 1205.

In addition to the sections cited by defendant, we also consider subsection (b)(7) of section 406, which prohibits the issuance or filling of "any prescription for a controlled substance other than on the appropriate lawful prescription form." (Ill. Rev. Stat. 1991, ch. 56½, par. 1406(b)(7).) Subsection (b)(7) further states:

> "However, in the case of any epidemic or a sudden or unforeseen accident or calamity, the prescriber may issue a prescription on a form other than the *official prescription form issued by the Department,* where failure to issue such a prescription might result in loss of life or intense suffering, but such prescription shall have endorsed thereon, by the prescriber, a statement concerning the accident, calamity or circumstance constituting the emergency, the cause of which *the unofficial blank* was used." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 56½, par. 1406(b)(7).)

This subsection indicates that there is more than one type of prescription blank, but that prescriptions for controlled substances (schedule II drugs) must be written only on the official prescription blanks issued by the Department, not on the unofficial prescription blanks normally used by physicians. This interpretation is bolstered by the definition of "Official prescription blanks" as "the triplicate prescription forms supplied to practitioners by the Department for prescribing Schedule II Designated Product controlled substances." Ill. Rev. Stat. 1991, ch. 56½, par. 1102(cc).

The State argues that statutory interpretation is irrelevant here because the jury found that the forms were either official prescription blanks or counterfeits. The State's argument misses the point.

The prosecutor argued to the jury that it could find, from its own experience, that the forms were official prescription forms, yet the jury had no way to know what was an official prescription blank. The arguments of the prosecutor, in tandem with the instructions, implied to the jury that if it found that these were ordinary prescription forms, it could convict defendant. The Food, Drug and Cosmetic Act defines a "[p]rescription" as "any order for drugs or medical devices, written or verbal by a physician, dentist, veterinarian or other persons authorized to prescribe drugs or medical devices ***, containing the following: (1) name of the patient; (2) date when prescription was given; (3) name and strength of drug or description of the medical device prescribed; (4) quantity, directions for use, prescriber's name, address and signature, and DEA number where required, for controlled substances." Ill. Rev. Stat. 1991, ch. 56½, par. 502.36.

■ The forms at issue are virtually identical. Each 5.5- by 4.25-inch piece of paper has the name of a clinic printed at the top, with the clinic's purported address and telephone number beneath that. Other than the different name and address, the forms all state the following:

"Name_____

Address_____ Date_____

[Prescription symbol Rx and representation of a funnel and a beaker.]

May Substitute_____, M.D.

May Not Substitute_____, M.D.

DEA#_____ Refill 1 2 3 NR

MBF 7480."

While these forms may be genuine or counterfeit unofficial prescription forms, as a matter of law, they do not satisfy the requisites of official prescription blanks.

■ The State argues that expert testimony was unnecessary to prove that the forms were counterfeit prescription blanks. We disagree. We do not believe that the reasonable person standard for determining whether these forms are capable of deceiving is appropriate under the statute. Because the purpose of the Act is to limit the access to controlled substances (Ill. Rev. Stat. 1991, ch. 56½, par. 1100), we conclude that using a reasonable pharmacist standard furthers the statutory goal. See also Ill. Rev. Stat. 1991, ch. 56½, par. 1406(b)(3);

*People v. Henderson* (1978), 71 Ill. 2d 53, 60 (Clark, J., dissenting) (section 406(b) of the Act was designed to prevent "the use of false prescriptions to procure drugs").

The standard for reviewing the sufficiency of the evidence to support a conviction is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Smith* (1992), 149 Ill. 2d 558, 565.) Here, no rational trier of fact could have found the elements of the offense because the State did not present any evidence to prove that the forms were official prescription blanks for the prescribing of schedule II (controlled) substances, nor did it present any evidence that these blanks were capable of deceiving a pharmacist. Moreover, since the jury had no information regarding what constituted an official prescription form, it lacked sufficient information to determine whether these forms would deceive anyone. Therefore, defendant's conviction must be reversed.

Defendant's conviction of the unlawful possession of official or counterfeit prescription blanks is reversed. The other convictions are unaffected by this judgment.

Reversed.

McLAREN and QUETSCH, JJ., concur.